SIDNEY J. ROSENTHAL & another[1] vs. COMMISSIONER
OF CORPORATIONS AND TAXATION.

Suffolk.   March 3, 1976. — March 22, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

For the reasons stated in *Morville House, Inc.* v. *Commissioner of
Corps. & Taxation, ante,* 928 (1976), "interest reduction payments"
made under a mortgage insurance agreement by the Federal
Housing Commissioner to a mortgagee on behalf of a partnership
which operated a low and moderate income housing project were
not an element of gross income taxable under G. L. c. 121A, § 10,
as appearing in St. 1956, c. 640, § 4.   [942]

BILL IN EQUITY filed in the Supreme Judicial Court for
the county of Suffolk on July 22, 1975.

The case was reserved and reported by *Kaplan, J.,*
without decision.

*James C. Donnelly, Jr.,* for the plaintiffs.

*Thomas Miller,* Assistant Attorney General, for the de-
fendant.

HENNESSEY, C.J.   This action for a declaratory judg-
ment comes before us on a statement of agreed facts.
The matter was reserved and reported for our determina-
tion by a single justice of this court.

The plaintiffs are general partners of Roberts Fall River
Associates, a limited partnership organized under G. L.
c. 109.   On or about July 13, 1971, the plaintiffs, on be-
half of the limited partnership, submitted an application

[1] Myron C. Roberts.

to the Department of Community Affairs (DCA) seeking authorization and approval for construction of a low and moderate income housing project in Fall River, Massachusetts, under G. L. c. 121A. The application contained "minimum standards" which the plaintiffs proposed would govern the financial operation of the project. These "minimum standards" contained, inter alia, this provision: "The gross income (which words shall have the same meaning as the words 'gross receipts' appearing in Section 15 of . . . Chapter 121A) in any calendar year shall be the gross rental income from the occupants of the project . . . actually received in cash by the Limited Partnership in any particular calendar year." The application and the "minimum standards" eventually were approved by the DCA.

The plaintiffs then entered into a contract with the city of Fall River (city) pursuant to G. L. c. 121A, § 6A. This contract provided that the limited partnership would construct, maintain and manage the "project" in accordance with the "minimum standards" set forth in the application as approved by the DCA and the provisions of c. 121A as then in effect. The contract further contained this provision: "[W]ithout mutual consent, any amendment subsequent to the delivery of this Contract, of any of the provisions of . . . Chapter 121A . . . or of the Minimum Standards now applicable to the Project, shall not affect the Project."[2]

On or about October 13, 1971, a mortgage insurance agreement was entered into by the Secretary of Housing and Urban Development (HUD) (acting by and through the Federal Housing Commissioner), the Massachusetts Housing and Finance Agency (the mortgagee) and the

---

[2] General Laws c. 121A, § 6A, inserted by St. 1960, c. 652, § 5, expressly approves this type of provision: "Such contract may provide that, without mutual consent, any subsequent amendment of any such provisions, rules, regulations and standards shall not affect the project."

plaintiffs. This contract provided in essence that HUD would make "interest reduction payments" on behalf of the plaintiffs directly to the mortgagee so that the plaintiffs as mortgagors would be obligated to pay interest on the mortgage at the rate of only one per cent a year. See 12 U.S.C. § 1715z-1(a), (c) (1970). 24 C.F.R. § 236.501 et seq. (1972). By the terms of this agreement the plaintiffs were to establish a "basic rental charge" for each unit in the "project" (subject to HUD approval) based on the operating cost of the "project" less the "interest reduction payments," and to return to HUD each month any rents collected in excess of the "basic rental charge."[3]

Thereafter, the limited partnership constructed the "project," and HUD made (and is making) "interest reduction payments" to the mortgagee according to the last mentioned contract.[4] The plaintiffs have filed income tax returns with the Commissioner of Corporations and Taxation (Commissioner) but, since (and including) 1972, never have included the "interest reduction payments" within the reported gross income from all sources. The Commissioner contends that, under c. 121A, § 10, the plaintiffs must include the "interest reduction payments" as an element of their gross income,[5] and has assessed a

---

[3] The plaintiffs' part in this mortgage insurance agreement was limited to covenanting to give up certain incidents of ownership of the "project," especially with regard to tenant selection and right of sale of the project to a prospective purchaser.

[4] Since 1972 HUD has paid the mortgagee a total of $647,442 in "interest reduction payments." The parties expect that the payments will continue for the life of the mortgage at a rate of $334,034 a year.

[5] General Laws c. 121A, § 10, as appearing in St. 1956, c. 640, § 4, levies an excise of five per cent on the "gross income . . . from all sources" of an entity operating a c. 121A "project." The version of § 10 which governs this case does not define gross income, however. The Legislature has remedied the situation by inserting a definition of gross income into the section by St. 1975, c. 827, § 7 (approved December 23, 1975), and it is clear from a reading of this new definition that "interest reduction payments" are not intended to be taxable to persons in the position of the plaintiffs here.

tax deficiency against the plaintiffs for the years 1972 and 1973.

In opposition to the Commissioner's assertion, the plaintiffs proffer two arguments. They contend that "gross income . . . from all sources," as used in c. 121A, § 10, does not include the HUD "interest reduction payments," and, alternatively, that the Commissioner's interpretation of what constitutes gross income violates their contract with the city and c. 121A, § 6A.

1. We this day have decided the case of *Morville House, Inc.* v. *Commissioner of Corps. & Taxation, ante,* 928 (1976), a case which squarely presents the same issue of law controlling in this dispute. The reasoning of and the result we reached in *Morville House* are fully applicable to the instant case. From all we have said in *Morville House* it is clear that we need not, and do not, treat the alternative contention of the plaintiffs here.

2. The case is remanded to the county court with instructions that a judgment be entered declaring the Federal "interest reduction payments" not taxable as gross income to the plaintiffs under G. L. c. 121A, § 10.

*So ordered.*